UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MATTHEW COLWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-23-476-G |
| | ) |
| RYAN WALTERS et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff Matthew Colwell herein brings claims for wrongful and retaliatory termination in violation of the First Amendment, pursuant to 42 U.S.C. § 1983, against Defendant Ryan Walters and Defendant Matt Langston, in both their official and individual capacities. *See* Compl. (Doc. No. 1).

Defendants have jointly filed a Motion to Dismiss the official-capacity claims (Doc. No. 8) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has responded (Doc. No. 14), and Defendants have replied (Doc. No. 20). Defendants also have jointly filed a Rule 12(b)(6) Motion to Dismiss the individual-capacity claims (Doc. No. 10). Plaintiff has filed a Response (Doc. No. 13), and Defendants have filed a Reply (Doc. No. 19). Accordingly, both motions are at issue.

I.  *Summary of the Pleadings*

In the Complaint, Plaintiff alleges the following facts:

Plaintiff was employed by the Oklahoma State Department of Education ("OSDE") as Program Manager of School Success from January 19, 2022, until he was terminated on May 26, 2023. Compl. ¶ 5 (Doc. No. 1). Defendant Walters is Superintendent of Public

Instruction for the State of Oklahoma. *Id.* ¶ 2(A). Defendant Langston is the Chief Policy Advisor of Administrative Services for OSDE. *Id.* ¶ 2(B).

On May 25, 2023, Defendant Walters caused an email to be sent threatening all OSDE employees with termination if any employee "leaked" internal documents to the press. *Id.* ¶ 8. The email closed by stating: "To recap, any employee found leaking information to the press will face immediate termination." *Id.* The email was prepared and signed by Defendant Langston. *Id.* Defendant Langston publicly stated that he prepared this email (the "Keep Quiet Email") in a format that would allow him to trap employees who shared the email to the press or to other third parties. *Id.* ¶ 9.

According to Plaintiff, there were two purposes for the Keep Quiet Email. *See id.* ¶ 10. The first was to intimidate and chill the First Amendment rights of employees. *Id.* ¶¶ 10, 19 (describing the email as "a direct threat"). The second was to retaliate against employees who shared information about matters of public concern in the OSDE with members of the press or outside officials. *Id.* ¶ 10.

On May 26, 2023, Defendant Walters terminated Plaintiff's employment for the reason that Plaintiff had shared information with the office of the Oklahoma Attorney General and with an Oklahoma State Representative. *Id.* ¶ 11. The information shared was a memorandum explaining that Defendant Walters' proposed teacher pay plan "contravened the requirements of federal and state laws and could have the effect of costing the State of Oklahoma approximately $18,000,000." *Id.* ¶ 13.

Defendant Walters is the sole decisionmaker regarding the hiring and firing of OSDE employees. *Id.* ¶¶ 6, 18. Defendant Langston "directly and personally participated

2

in" Plaintiff's termination by "devising and setting up an email trap to find employees who disseminated information to persons outside [OSDE]" and "by personally threatening the termination of any employee who violated this policy." *Id.* ¶ 18.

## II. Discussion

### A. Plaintiff's Claims Against Defendants in Their Official Capacities

In Count One, Plaintiff seeks prospective declaratory and equitable relief against both Defendants in their official capacities. *See id.* ¶¶ 19-22. Specifically, Plaintiff requests that the Court declare the Keep Quiet Email "an unlawful and overly broad restraint on the First Amendment rights" of OSDE employees and "prospectively enjoin . . . Defendants from future enforcement of the policies described therein." *Id.* at 4-5.[1]

Defendants seek dismissal of Count One for lack of subject-matter jurisdiction, arguing in relevant part that Plaintiff lacks Article III standing to pursue these claims. *See* Defs.' O-C Mot. (Doc. No. 8) at 1-2; Defs.' O-C Reply (Doc. No. 20) at 2-4. In response, Plaintiff concedes that his request for injunctive relief cannot be sustained but maintains that the claim for declaratory relief is properly before the Court. *See* Pl.'s O-C Resp. (Doc. No. 14) at 2-11, 2 n.1.

#### 1. Relevant Standard

A motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure takes one of two forms: a facial attack or a factual

---

[1] Under *Ex parte Young*, "a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012).

attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). Here, Defendants make a facial attack on the sufficiency of the allegations contained in the Complaint. *See* Defs.' O-C Mot. at 1-2. In reviewing a facial attack, a district court confines its analysis to the pleadings and must accept the allegations in the complaint as true. *See Pueblo of Jemez*, 790 F.3d at 1148 n.4. As the party asserting federal jurisdiction, Plaintiff bears "the burden of alleging the facts essential to show jurisdiction." *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002) (internal quotation marks omitted).

   2. *Analysis*

"Article III of the United States Constitution only extends federal judicial power to cases or controversies." *United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000). "Article III standing is a jurisdictional requirement for a plaintiff to plead and prove, and a lack of standing may be challenged by a motion under Rule 12(b)(1)." *Altstatt v. Bd. of Cnty. Comm'rs for Okla. Cnty.*, No. CIV-22-811-D, 2023 WL 6208550, at *2 (W.D. Okla. Sept. 22, 2023). To have standing to sue, a plaintiff must properly allege: (1) it "ha[s] suffered an injury in fact—an invasion of a legally protected interest"—"that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted); *New England Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008).

Defendants assert that Plaintiff's claim for prospective declaratory relief fails to establish injury or redressability for standing purposes because the request is directed at remedying harms faced by current OSDE employees, and Plaintiff is not such an employee. The Court agrees.

Plaintiff alleges in relevant part that the Keep Quiet Email "would chill employees from the exercise of their First Amendment rights" and "threaten[] the employment of persons with [OSDE]."  Compl. ¶¶ 20-21.  Plaintiff, however, is no longer an OSDE employee and thus is not so threatened or chilled.  It follows that Plaintiff has not sufficiently alleged an injury to himself that is likely to be redressed by the requested declaratory relief—i.e., a declaration that the Keep Quiet Email is unlawful as to OSDE "employees." Compl. at 4-5; *see Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38 (1976) ("[W]hen a plaintiff's standing is brought into issue the relevant inquiry is whether . . . the plaintiff has shown an injury *to himself* that is likely to be redressed by a favorable decision." (emphasis added)); *cf. V-1 Oil Co. v. Utah State Dep't of Pub. Safety*, 131 F.3d 1415, 1422 (10th Cir. 1997) ("[T]he Eleventh Amendment does not permit judgments against state officers declaring they violated federal law in the past." (internal quotation marks omitted)).

Plaintiff objects that Defendants ignore the potential injury caused by Defendants' "gag order" to "Plaintiff's on-going right to receive uncensored information from [OSDE] employees in the future"  Pl.'s O-C Resp. at 3.  But Count One, even if accepted as true, does not plausibly allege a claim premised upon the violation of such a right of a member of the public to receive information from an employee.  *See* Compl. ¶¶ 19-22.  The Court

5

may not "declare principles or rules of law which cannot affect the matter in issue in the case before it." *Mills v. Green*, 159 U.S. 651, 653 (1895).

Plaintiff also cites the damages claims raised in Count Two as a basis for allowing the declaratory-judgment claim to stand. While entirely plausible that Plaintiff could seek some type of declaratory relief in connection with his Count Two claims, Plaintiff may not obtain relief for his termination in the form of a judgment stating that OSDE's policy is currently chilling the speech of other person who remain OSDE employees. "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Plaintiff's official-capacity claims therefore shall be dismissed for lack of subject-matter jurisdiction pursuant Rule 12(b)(1) of the Federal Rules of Civil Procedure.

   B.   *Plaintiff's Claims Against Defendants in Their Individual Capacities*

In Count Two, Plaintiff seeks actual and punitive damages against Defendants in their individual capacities based upon his unlawful termination from OSDE. *See* Compl. ¶¶ 23-26. Plaintiff alleges that his termination, which "was the direct result of supposedly violating Defendants' prohibition against sharing internal communications with members of the press," violated Plaintiff's rights under the First Amendment. *Id.* ¶ 24. Citing Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants argue that they are entitled to qualified immunity on Count Two. *See* Defs.' I-C Mot. at 3-8.

6

*1. Relevant Standard*

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id.* at 1192.

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

*2. Analysis*

Defendants argue that they are entitled to qualified immunity on Plaintiff's First Amendment claims. "Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

7

of which a reasonable person would have known." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stewart v. Beach*, 701 F.3d 1322, 1330 (10th Cir. 2012) (internal quotation marks omitted).

While a defendant may assert the defense of qualified immunity in a motion to dismiss, doing so "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted). "At [the motion to dismiss] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis omitted). "In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States" and "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Defendants do not dispute that they were acting under color of state law in connection with Plaintiff's termination from his position as Program Manager of School Success. Defendants' challenge is broadly aimed at whether Plaintiff can show that, in terminating Plaintiff, Defendants "subject[ed]" Plaintiff, "or cause[d]

8

[Plaintiff] to be subjected," "to a deprivation of his . . . lawful rights." *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (internal quotation marks omitted).

The First Amendment "forbids abridgment of the freedom of speech." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 585 U.S. 878, 891-92 (2018). A government employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Mvers*, 461 U.S. 138, 140 (1983). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "However, the interests of public employees in commenting on matters of public concern must be balanced with the employer's interests in promoting the efficiency of the public services it performs through its employees." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (internal quotation marks omitted).

Through two decisions—*Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), and *Garcetti*, 547 U.S. at 417—the Supreme Court has articulated five factors to be considered in analyzing public-employee free-speech cases. *Leverington*, 643 F.3d at 724 (explaining that "after *Garcetti*, it is apparent that the *Pickering* analysis of freedom of speech retaliation claims is a five step inquiry" that will be referred to as "the *Garcetti/Pickering* analysis" (internal quotation marks omitted)). The Tenth Circuit has summarized these factors as follows:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the

9

>  public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227-28 (10th Cir. 2014) (internal quotation marks omitted). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018) (internal quotation marks omitted).

### a. Whether the Speech Was Made Pursuant to Plaintiff's Official Duties

Defendants first contend that Plaintiff's alleged communication regarding the proposed teacher pay plan was made not as a citizen but pursuant to Plaintiff's official duties, such that First Amendment protection does not apply. *See* Defs.' I-C Mot. at 6-7; *Hesse v. Town of Jackson*, 541 F.3d 1240, 1249 (10th Cir. 2008) ("If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." (internal quotation marks omitted)).

The Tenth Circuit takes a "broad view" of what constitutes speech that is pursuant to an employee's official duties, and speech may be so categorized "even if it deals with activities that the employee is not expressly required to perform." *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008) (internal quotation marks omitted). Courts examine the instances of speech on a case-by-case basis, "looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." *Rohrbough v. Univ. of Colo.*

*Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010). "[T]he ultimate question is whether the employee speaks as a citizen or instead as a government employee." *Id.* (internal quotation marks omitted).

Here, the Complaint avers that Plaintiff was employed by OSDE, which "is charged with advancing education of students in the State of Oklahoma." Compl. ¶ 13. The relevant speech was the sharing of a memorandum explaining that Defendant Walters' proposed plan "contravened the requirements of federal and state laws" and could cost the State approximately $18,000,000. *Id.*

Viewing these factual allegations in the light most favorable to Plaintiff, Plaintiff has pleaded, beyond mere speculation, that his speech was made as a public citizen rather than as an employee. Although Defendants argue that such reporting to other state officials was "in accordance" with Plaintiff's job duties, Defs.' I-C Mot. at 7, at this stage the Court is limited to reviewing the Complaint only. The pleading at least partially contradicts Defendants' view. *See* Compl. ¶ 12 ("Mr. Colwell's communication . . . was not part of his official duties" and "would be against the express directive of [Defendants]"); *see also Lane v. Franks*, 573 U.S. 228, 240 (2014) (noting that the "critical question" is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties"). Further, the fact that Plaintiff shared the memorandum with officials outside of OSDE is consistent with a finding that the speech was not made pursuant to his ordinary employment duties. *See Rohrbough*, 596 F.3d at 747 ("[S]peech directed at an individual or entity outside of an employee's chain of command is often outside of an employee's official duties.").

For purposes of Rule 12(b)(6), Plaintiff has adequately and plausibly pleaded that his speech was not made pursuant to his employment duties. *See Lane*, 573 U.S. at 240 ("[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech."); *Lobato v. N.M. Env't Dep't*, 838 F. Supp. 2d 1213, 1227 (D.N.M. 2011) ("A court may find that an employee spoke out as a citizen even where the expression was made at work, and involved actions occurring in the workplace.").

### b. Whether the Speech Was on a Matter of Public Concern

Defendants also argue that Plaintiff fails to plausibly allege that the disclosure of the memorandum constituted speech "on a matter of public concern," as required to be entitled to First Amendment protection. *Eisenhour*, 744 F.3d at 1227 (internal quotation marks omitted); *see* Defs.' I-C Mot. at 6-7.

To adequately plead this element, Plaintiff must allege that his speech "involve[d] a matter of public concern and not merely a personal issue internal to the workplace." *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995).

> Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. The inquiry turns on the "content, form, and context" of the speech.

*Lane*, 573 U.S. at 241 (quoting *Connick*, 461 U.S. at 147). Courts also consider the motive of the speaker: "[w]as the speech calculated to redress personal grievances or did it have some broader public purpose?" *Eisenhour*, 744 F.3d at 1228.

12

As noted above, Plaintiff alleges that he was terminated for sharing a memorandum that concluded that a proposed plan of Defendant Walters violated federal and state law and would cost the State approximately $18,000,000. *See* Compl. ¶¶ 11, 13. Plaintiff additionally alleges that OSDE "is a public, constitutional agency of the State of Oklahoma," "charged with advancing education of students in the State of Oklahoma." *Id.* ¶ 13.

Construed in Plaintiff's favor, these allegations plausibly reflect that the communication involved more than a mere personal grievance or an internal agency issue. Rather, the Complaint sufficiently establishes that Plaintiff's sharing of the memorandum constituted speech relating to a concern to the community and/or "a subject of legitimate news interest." *Lane*, 573 U.S. at 241 (internal quotation marks omitted); *see Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988) ("Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the party of [government] officials, in terms of content, clearly concerns matters of public import."); *Glover v. Mabrey*, 384 F. App'x 763, 769-70 (10th Cir. 2010) ("The use of public funds and the objectives, purposes and mission of a government agency are well within the rubric of matters of 'public concern.'" (alteration, omission, and internal quotation marks omitted)). Plaintiff therefore has adequately pleaded that his protected speech involved a matter of public concern for purposes of the *Garcetti/Pickering* analysis.

c. *Conclusion*

Defendants' assertion of qualified immunity rests upon their contentions of inadequate pleading addressed above. But as set forth herein, "the facts that [Plaintiff] has

13

alleged" do "make out a violation of a constitutional right." *Keith*, 707 F.3d at 1188 (internal quotation marks omitted). Further, from the authorities cited above it is clear that this First Amendment right was clearly established at the time of Plaintiff's termination in May 2023. *See supra*; *Avant*, 2022 WL 2255699, at *6-7 (holding that *Heffernan* and *Bird* clearly establish a First Amendment right against retaliation for perceived speech). Dismissal of these claims is not warranted on this basis.[2]

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 8) is GRANTED. The claims raised against Defendants in their official capacities by Count One of the Complaint are DISMISSED without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (Doc. No. 10) is DENIED. Plaintiff's 42 U.S.C. § 1983 claims raised against Defendants in their individual capacities for violation of the First Amendment remain pending.

---

[2] This finding "does not foreclose Defendants from reasserting their entitlement to qualified immunity on a motion for summary judg[]ment should [Plaintiff's] allegations in the complaint prove to be unfounded." *Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996) (reversing a grant of qualified immunity on a motion to dismiss where it was "premature, absent a factual record"). The Court makes no finding at this stage as to whether Defendants will be able to show entitlement to qualified immunity when Plaintiff "can no longer rest on the pleadings." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted).

IT IS SO ORDERED this 12th day of August, 2024.

_____
CHARLES B. GOODWIN
United States District Judge